

Tagged

**ORDERED in the Southern District of Florida on December 28, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                    Case No.:  09-29573-PGH

BOCA VILLAGE ASSOCIATION, INC.,           Chapter 7

   Debtor.
_____/

<u>ORDER GRANTING CREDITORS' MOTION TO DISMISS CHAPTER 7 CASE</u>

**THIS MATTER** came before the Court for hearing on November 17, 2009 ("Hearing") upon Roofing Services, Inc. d/b/a Best Roofing's ("Best Roofing") *Motion to Dismiss Chapter 7 Case* ("Motion")(D.E.#13), and Rainbow Colors, Inc. d/b/a RCI Painting & Waterproofing ("RCI," collectively with Best Roofing, the "Creditors") *Motion for Joinder* in Best Roofing's Motion (D.E.#18). The Creditors seek dismissal of the above-referenced Chapter 7 case, filed by Boca Village Association, Inc. (the

1

"Debtor" or "Boca Village"), on September 16, 2009 (the "Petition Date").

## BACKGROUND

At the Hearing, the Debtor and Best Roofing agreed on the record that the determination of this matter presented a purely legal issue based upon the facts contained in the parties' stipulations and proffer. *See Stipulation of Uncontested Facts* (D.E.#23) and *Supplemental Stipulation of Uncontested Facts* (D.E.#41). Thus, it is undisputed that the Debtor is a nonprofit condominium association with sixty-six units (the "Condominium"). Grant Management, Inc. was hired to handle the day-to-day affairs of the Condominium. Upon the Debtor's formation in 1975, the Debtor's Declaration of Condominium of Boca Village Phase I (the "Declaration"), Articles of Incorporation (the "Articles"), and By-Laws (collectively, the "Condominium Documents") were recorded in the Public Records of Palm Beach County, Florida (ORB 2437 at Page 868). Motion Exs. "A" & "B".

Pursuant to the terms of the Condominium Documents and the Condominium Act of the State of Florida, Fla. Stat. §§ 718.101-.622 ("Condominium Act"), the Debtor was organized to administer and manage the operations of the Condominium, to enforce the provisions of the Declaration, to levy and collect assessments, and to adopt, promulgate and enforce rules and regulations.

2

In October 2005, Hurricane Wilma caused substantial damage to the roofs of the Condominium. On or about April 4, 2006, the board of directors of the Condominium voted to specially assess each unit owners $3,000.00 for necessary expenses caused by Hurricane Wilma, including roof repair, pool repair, and tree and stump removal, and ultimately collected $191,803.00 (the "Special Assessment"). The Debtor immediately spent $48,500.00 from the Special Assessment for emergency repairs including tree and stump removal, pool repair, emergency roof repair, electrical and fixtures, and miscellaneous repairs. After soliciting three competing bids, the Debtor hired Best Roofing to replace the damaged roofs for $211,000.00. Soon thereafter, the Debtor paid Best Roofing $73,885.00 from the Special Assessment with the balance being due upon completion. A dispute subsequently arose resulting in Best Roofing suing the Debtor in State Court for payment of roofing services (the "State Court Action"). Paul Greco, the Debtor's corporate representative, testified at a pre-trial deposition for the State Court Action that the Debtor was holding $148,000.00 of contract funds obtained from the unit owners.

On March 4, 2009, Best Roofing obtained a Final Judgment against the Debtor in the amount of $123,084.50, plus interest, which was recorded in the Public Records of Palm Beach County, Florida on March 5, 2009. Motion Ex. "C". The State Court

reserved jurisdiction to award costs and to consider motions for attorney fees. Best Roofing's pending claim for attorneys' fees in the State Court Action has been stayed by the Debtor's bankruptcy filing. Following the entry and recording of the Final Judgment, Best Roofing filed garnishment actions to collect the Final Judgment.

Best Roofing later learned that the Debtor and Grant Management had set up a new bank account for the Debtor in the name of Grant Management (the "New Account"). Best Roofing then filed a garnishment action against Grant Management. Debtor's counsel entered an appearance in State Court for Grant Management and responded to the writ of garnishment claiming that Grant Management was not in possession of any of the Debtor's money or property, despite the fact that Debtor's money was specifically placed into the New Account in the name of Grant Management to avoid Best Roofing's collection efforts.

After Best roofing obtained its Final Judgment, the Debtor hired another roofing company ("Campany Roofing") to perform additional roof repairs. On April 20, 2009, after Best Roofing had filed and served its garnishment action, the Debtor paid Campany Roofing $35,363.50 from the Special Assessment.

By the time Best Roofing learned about the transfer of the Debtor's funds into the New Account, the account balance had been reduced to $46,768.52. Best Roofing was able to garnish the

New Account balance of $46,768.52 which consisted of the remaining balance of the Special Assessment along with additional monies from the Debtor's operating account. Best Roofing obtained an additional judgment against Grant Management for the remaining balance which remains due and owing by the Debtor.

The Debtor's bankruptcy schedules listed accounts receivable in the total amount of $71,616.81 for varying amounts of assessments due from unit owners. However, in its initial filing, the Debtor failed to disclose that it filed and recorded liens, in the Public Records of Palm Beach County, for unpaid assessments against five Condominium unit owners. As of the Petition Date, no releases of these liens had been recorded.

Although Bankruptcy Schedule "B", item 21 requires a debtor to list other contingent and unliquidated claims owing to the debtor, the Debtor's initial schedules did not list any contingent or unliquidated claims. However, pursuant to the Declaration, the Debtor was granted a lien on all dwelling units and their appurtenant interests in the common elements, "which lien shall secure and does secure the monies due for all assessments now or hereafter levied against the owner of each DWELLING UNIT." Motion Ex. "A": Declaration at § XXX, ¶J. On December 2, 2009, two weeks after the Hearing, the Debtor filed an Amended Schedule "B" stating that the "Debtor has a lien on

all dwelling units and appurtenant interests in the common elements, which lien secured monies due for all assessments now or hereafter levied against the owner of each dwelling unit". Debtor's Amended Schedule "B" also disclosed that the Debtor had filed and recorded liens against certain Condominium units.

On September 15, 2009, one day prior to the Petition Date, an entity known as Village at Boca Condominium Association, Inc. ("VBCA") filed Articles of Incorporation listing the identical officers that the Debtor had listed in its Statement of Financial Affairs. Motion Ex. "D": Articles of Incorporation for VBCA. According to the parties' stipulation, VBCA was formed for the purpose of collecting future assessments against the owners of the dwelling units for the future operations of the Condominium property.

The Creditors' Dismissal Motion alleges that the Debtor's bankruptcy should be dismissed for cause pursuant to 11 U.S.C. § 707(a) as a bad faith filing. The Creditors maintain that the Debtor's bad faith is evidenced by its actions in response to Best Roofing's attempted garnishment and collection of its Final Judgment. These acts include the officers' direct involvement in the formation of VBCA on the eve of the filing of this case, the hiding of Debtor's funds that were subject to garnishment in the New Account, the failure to disclose the ownership of certain lien rights and contingent claims due and owing to the Debtor,

6

and the attempt to liquidate the Debtor condominium association without statutory or contractual authority. The Creditors also argued that the Debtor improperly attempted to transfer or assign its assessment and lien rights to VBCA.

The Debtor argued in response that the Creditors do not have standing to assert that the Debtor lacks authority to file a Chapter 7 liquidation, that "bad faith" does not provide cause for dismissal under § 707(a), and that even if it did, the Debtor did not act in bad faith.

As discussed below, based upon the specific facts presented in this matter, the Court finds that cause exists to dismiss this case pursuant to § 707(a).

## CONCLUSIONS OF LAW

**A.    Corporate Debtor's Bad Faith Can Provide § 707(a) Cause For Dismissal**

Section 707(a) of the Bankruptcy Code, provides that:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including --

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees and charges required under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.]; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after

> the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

The Eleventh Circuit has not addressed the issue of whether bad faith can constitute cause for dismissal under § 707(a). However, courts that have considered the issue generally begin their analyses by noting that the statue's three listed cause for dismissal grounds are illustrative and not exhaustive. *See e.g. In re Padilla,* 222 F.3d 1184, 1191 (9th Cir. 2000)(noting that 11 U.S.C § 102(3) defines "including" for purposes of Title 11 to be "not limiting"). However, from this initial point of agreement the analyses diverge.

The minority position, and the one urged by the Debtor, is that bad faith does not provide cause for dismissal under § 707(a). *See e.g. Padilla*, 222 F.3d at 1191 ("[B]ad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a).)"; *In re Etcheverry*, 242 B.R. 503 (D. Colo. 1999)(holding that because there is no explicit "good faith" requirement in chapter 7, bad faith cannot constitute "cause" for dismissal under § 707(a)). In arriving at this conclusion - that bad faith cannot constitute § 707(a) cause for dismissal - such courts note the differences between Chapters 11 and 13 on one hand, and Chapter 7 on the other.

8

*Padilla,* 222 F.3d at 1193. In order to confirm a plan under Chapter 11 or 13, the Bankruptcy Code expressly requires that the plan have been proposed in good faith. *Id.* (*citing* 11 U.S.C. §§ 1129(a)(3) and 1325(a)(3)). However, courts adhering to the minority position note there is no express "good faith" requirement under Chapter 7.[1] *Id.* In *Etcheverry*, a case relied on heavily by the Debtor, the court reasoned that the exclusion of a good faith requirement in Chapter 7 makes sense in light of the different post-filing debtor-creditor relationships. 242 B.R. at 506. A Chapter 11 or 13 debtor in a reorganization gets to retain its assets and reorder its contractual obligations. *Padilla*, 222 F.3d at 1193. In return for such benefits, the debtor must show good faith in its post-filing creditor relationships. *Id.* However, there is no continuing relationship

---

[1] *Padilla* is one of many cases on the issue that predates the enactment of BAPCPA. Since BACPA, § 707(b)(3)(A)expressly incorporates the concept of bad faith as grounds to dismiss the case of an individual debtor with mostly consumer debts for whom the presumption of abuse does not arise or is successfully rebutted. *See* 11 U.S.C. § 707(b)(3)(A). *See also*, *Perlin v. Hitachi Capital America, Corp., Inc.,* 497 F.3d 364, 370 (3d Cir. 2007) (noting that "two separate subsections govern the dismissal of bankruptcy petitions filed under Chapter 7: subsection (a) governs the dismissal of all bankruptcy filings, when adequate 'cause' has been shown, and subsection (b) governs the dismissal of only those bankruptcy filings involving primarily consumer debts, when granting relief would be an 'abuse' of Chapter 7.") In *Perlin,* the Third Circuit noted that subsections (a) and (b) of § 707 were enacted by Congress at different times for different reasons. *Id.* In *Perlin,* the issue was whether courts ruling on a motion to dismiss for cause under §707(a) can consider a debtor's income and expenses as evidence of lack of good faith. *Id.* at 369. In determining that they could, the Third Circuit rejected the debtor's negative implication argument, i.e., that because §707(b) addresses income and expenses, Congress did not intend for income and expenses to be considered under § 707(a). *Id.* The *Perlin* court noted that the BAPCPA modifications to § 707(b) did not imply anything about the dismissal of bankruptcy cases under § 707(a). *Id.* at 371. Debtor's negative implication argument that Congress elected not to add a good faith requirement under § 707(a) when it modified § 707(b) is similarly unpersuasive to this Court.

between the debtor and its creditors in a Chapter 7 liquidation. *Id.* In Chapter 7, the debtor surrenders all of its non-exempt assets for distribution to its creditors "regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith". *Id.* However, a pivotal point in the analysis by courts finding that bad faith does not constitute cause for dismissal under § 707(a), is the fact that the Bankruptcy Code provides remedies for Chapter 7 debtor misconduct under certain circumstances. *Id.* at 1192; *Etcheverry*, 242 B.R. at 506; *see e.g.* 11 U.S.C. § 523 (a)(2)(A) (excepting from discharge debts for money or property obtained by false pretenses or actual fraud); 11 U.S.C. § 727(a)(2) (denying discharge to debtor who transfers or conceals property with intent to defraud a creditor); § 707(b)(3)(A)(providing for dismissal of case of an individual debtor whose debts are mostly consumer debts if the petition was filed in bad faith). The analyses generally reason that the Bankruptcy Code's specific provisions addressing debtor misconduct should be utilized before utilizing a general code provision, and conclude that bad faith per se is not cause for dismissal under § 707(a). *Padilla*, 222 F.3d at 1193.

There is substantial case law on both sides of this issue; the majority position is that a debtor's lack of good faith in commencing a Chapter 7 case can constitute cause for dismissal under § 707(a). *In re Kane & Kane*, 406 B.R. 163, 167 (Bankr.

S.D. Fla. 2009)(*citing In re Tallman*, 397 B.R. 451, 454 (Bankr. N.D. Ind. 2008)). In rejecting the argument that lack of good faith was not cause for dismissal under § 707(a), the Sixth Circuit noted that "although the jurisdictional requirement of good faith is not explicitly stated in the statute, it is inherent in the purposes of bankruptcy relief." *In re Zick,* 931 F.2d 1124, 1129 (6th Cir. 1991). Finding that lack of good faith was a valid basis for dismissal under § 707(a), the *Zick* court stated that "the facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *Id.* at 1127. However, the *Zick* court instructed that dismissal based on lack of good faith should be confined carefully and generally utilized only in egregious cases. *Id*. at 1129. In *Tamecki*, the Third Circuit agreed that § 707(a) allows dismissal for cause if the petition fails to demonstrate good faith in filing. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). The Third Circuit directed courts confronted with the issue to decide "whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law." *Id.*

The Eight Circuit adopted a narrower more cautious approach to bad faith in *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994). The Eighth Circuit accepted that some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith, but that bad faith amounting to

cause under "§ 707(a) should be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction." *Id.* (*citing In re Kahn*, 172 B.R. 613, 624-26 (Bankr. D. Minn. 1994)). The *Huckfeldt* court cautioned that "framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." *Id.* It determined that "the § 707(a) analysis is better conducted under the statutory standard, 'for cause'". *Id.* In *Huckfeldt,* the Eighth Circuit affirmed the lower court's dismissal for cause based on facts indicating that the debtor had manipulated his immediate earnings to ensure that his Chapter 7 case would frustrate a divorce decree and push his ex-wife into bankruptcy. *Id.* It was noted the debtor was not an honest but unfortunate debtor entitled to the equitable relief of a Chapter 7 liquidation. *Id.* at 833.

Having reviewed the law, this Court agrees with *Huckfeldt* and the well reasoned opinion of *Kane & Kane*, wherein Southern District of Florida Bankruptcy Judge Erik P. Kimball adopted the majority position that lack of good faith in commencing a Chapter 7 case can constitute cause for dismissal under § 707(a). 406 B.R. at 167. Having noted that the "potential bases for dismissal on grounds of bad faith were narrow," Judge

12

Kimball indicated that the "ultimate question [is] whether the petition was filed with the intent and desire to obtain the relief that is available under a particular chapter of the Bankruptcy Code, through the means that Congress has specified, or whether the debtor is pursuing some other goal." *Id*. at 168 (alterations in original)(*citing In re Tallman*, 397 B.R. at 456). In making this determination, courts look at the totality of the circumstances leading up to the filing of the case including the debtor's motive in filing, the purposes which will be achieved in the case, and whether the debtor's motive and purposes are consistent with the purpose of Chapter 7. *In re Bilzerian*, 258 B.R. 850, 857 (Bankr. M.D. Fla. 2001); *see also In re American Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004)(" The court must look at the totality of the circumstances . . . in order to determine whether the Bankruptcy Code is being used properly and fairly and, consequently, whether 'cause' exists to dismiss the case.").

**B. Cause Exists to Dismiss this Case**

It is generally understood that Chapter 7 serves the twin purposes of providing the honest but unfortunate debtor with a fresh start while providing for the orderly liquidation of the debtor's non-exempt assets for the benefit of all creditors. However, the objective of providing the honest but unfortunate debtor with a fresh start is not served in a corporate Chapter 7

13

case because corporate debtors are ineligible for discharge. *See* 11 U.S.C. § 727(a)(1). Thus, although § 707(a) applies equally in individual and corporate Chapter 7 cases, corporate Chapter 7 cases present unique considerations. Among these considerations is the fact that many Bankruptcy Code provisions designed to protect creditors from Chapter 7 debtor misconduct are irrelevant in corporate Chapter 7 cases.[2] For example, because a corporate Chapter 7 debtor is ineligible for discharge, § 727(a)(2) – which could deny a debtor's discharge for concealing property with intent to defraud a creditor - has no effect. Similarly, in the context of a corporate Chapter 7 case, various subsections of § 523 - which exempt specific debts from discharge under certain circumstances - also have no effect. Notwithstanding, a corporate Chapter 7 debtor does not have carte blanche to manipulate the provisions of the Bankruptcy Code to pursue goals contrary to the purpose and spirit of Chapter 7. When it appears under the totality of the circumstances that a "debtor has taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter

---

[2] The Court does not agree with the minority position espoused in *Etcheverry,* a case Debtor relied on heavily to argue that bad faith cannot constitute cause for dismissal under § 707(a). *See Etcheverry*, 242 B.R. 503. The availability of creditor remedies such as denial of discharge, or exception of specific debts from discharge in circumstances where creditors encounter debtors engaged in bad faith tactics was important to the *Etcheverry* court's reasoning. *Id*. at 506. However, *Etcheverry* is readily distinguished from this matter because it involved an individual debtor rather than a corporate debtor. The creditor remedies that were important to the *Etcheverry* court have no effect in the case of a corporate Chapter 7 debtor that is ineligible for discharge.

7", *Kane*, 406 B.R. at 168, a court can dismiss a Chapter 7 case
for bad faith constituting cause under § 707(a).

The Debtor argues that because a corporate debtor is
ineligible for discharge, the only purpose served in a corporate
Chapter 7 case is the fair and orderly liquidation of corporate
assets to creditors. The Court agrees. However, instead of
providing for the fair distribution of assets to creditors, it
appears to the Court that the Debtor's Chapter 7 filing is part
of an orchestrated scheme whose real purpose is to avoid
assessing unit owners for legitimate amounts due and owing for
the repair and maintenance of the Condominium property. The
actions taken by the officers and directors on behalf of the
Debtor convince the Court that dismissal for cause is warranted
in this matter.

In this case, the Debtor made a Special Assessment to
collect funds to pay for roof and other repairs. A dispute arose
among the parties. In his State Court Action pretrial deposition
testimony, the Debtor's corporate representative stated that the
Debtor was holding $148,000.00 of contract funds which would
have been sufficient to pay the Final Judgment of $123,084.50 in
full. The Debtor disagreed with the Final Judgment and
deliberately and improperly hid the Special Assessment and other
funds in the New Account under the name of Grant Management. The
Debtor does not dispute that it took this action for the purpose

15

of avoiding Best Roofing's collection efforts. The Debtor used the Special Assessment funds for other purposes such that the balance in the New Account was reduced to $46,768.52 by the time Best Roofing learned of the New Account's existence. On the eve of the Debtor's bankruptcy filing, articles of incorporation were filed for VBCA, an entity formed to collect future assessments from unit owners for the future operations of the Condominium. Thus, VBCA has not assumed the Debtor's obligations under the Final Judgment. It appears the only reason for filing the Debtor's bankruptcy case was the belief that a Chapter 7 trustee could not assess the unit owners for amounts due to the Debtor's Creditors.[3] The totality of the circumstances leading up to the filing of this case, including the Debtor's motive in filing, evidences the Debtor's lack of good faith. Therefore, the Court concludes that the Debtor is attempting to use the

---

[3] The Creditors cited *Dzikowski & Walsh v. Barbee (In re Westwood Cmty. Two Assoc., Inc.),* 2006 WL 940647 (11th Cir. 2006) to argue that if the Debtor's case is not dismissed, the trustee may not levy special assessments on unit owners to satisfy general unsecured claims against the Debtor. There were a series of decisions in *Westwood Community Two.* The decision cited by Creditors affirmed this Court's disgorgement of trustee attorney fees paid from the proceeds of an improper assessment. In *Unofficial Ad Hoc Comm. v. Barbee (In re Westwood Cmty. Two Assoc., Inc.),* No. 03-10180 (11th Cir. August 20, 2004), the Eleventh Circuit affirmed the District Court's reversal of Judge Lessen's decision to allow the trustee to levy a special assessment to pay claims for punitive damages based upon violations of the Fair Housing Act. *See Order Reversing Decisions of Bankruptcy Court*, No. 00-7616-CV (S.D. Fla. Nov. 25, 2002)(reversing Judge Lessen's *Opinion*, 2000 WL 33963918 (Bankr. S.D. Fla. Oct. 30, 2000)). In affirming the trustee's inability to collect the assessment, the Eleventh Circuit did not hold that a trustee cannot make special assessments. It merely held that the trustee had no greater rights than those of the association as stated in the Declaration. *See Barbee v. Menzano,* No. 03-10180 at 5.  The Court makes no determination of that issue here.

Bankruptcy Code improperly and unfairly, and that Debtor's lack of good faith constitutes cause to dismiss this case under § 707(a).

In urging the Court to deny the Creditors' Motion, the Debtor argues that it filed for bankruptcy relief because it had insufficient funds to maintain and operate the Condominium. The Debtor further argues that the alleged acts complained of by the Creditors are fraudulent transfers for which the Bankruptcy Code provides remedies. However, to allow this case to go forward would be to condone the Debtor's improper acts. Although filing bankruptcy to thwart a judgment creditor's collection efforts by itself may not be indicative of bad faith, dishonesty is. *See* 406 B.R. at 170. The Debtor's concealment of Special Assessment funds under the name of its management company was dishonest. In addition, the Debtor's initial schedules failed to disclose that the Debtor had perfected liens on individual units or that it had a lien on all dwelling units. The Debtor's tardy disclosure was not made until two weeks after the Hearing at which the Creditor made arguments based upon the Debtor's failure to disclose its ownership of lien rights and the existence of unliquidated contingent claims owing to the Debtor.

The Court is also unpersuaded by Debtor's argument that it filed because it had insufficient funds to maintain and operate the Condominium. Instead, the Debtor filed its bankruptcy

17

petition because it sought to avoid assessing the unit owners for an amount that was rightfully due and owing. Given that there are sixty-six units, the amount of an assessment necessary to satisfy the claims owed by the Debtor is not onerous. Debtor's maneuvers to avoid such an assessment substantiate the Debtor's lack of good faith.

The Debtor cites *In re Zick*, for its directive that dismissal of a Chapter 7 case for lack of good faith should be utilized only in egregious cases. 931 F.2d at 1129. The Debtor then argues that the facts of this matter are not so egregious as to warrant dismissal. In *Zick*, the Sixth Circuit stated that dismissal for lack of good faith should be "confined carefully and generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Id.* In this case, the Debtors concealed and misrepresented assets and sources of income, and then attempted to avoid a large single debt based on conduct akin to fraud and misconduct. In *Zick,* the Sixth Circuit also found particular merit in what had been described by Judge A. Jay Cristol as the "smell test." *Id.* at 1128 (*citing Morgan Fiduciary, Ltd. v. Citizens and Southern Int'l Bank,* 95 B.R. 232, 234 (S.D.Fla.1988)(affirming Judge Cristol's dismissal of

18

case)). Although the Court does not rely on the "smell test", the scheme orchestrated by the Debtor would not pass such a test.

The Debtor further argues that the vast majority of Chapter 7 filings are closed as "no asset" cases in which creditors receive no distribution. The Debtor maintains that Congress did not intend to preclude individuals and corporations from filing for bankruptcy because their creditors won't receive a distribution, and the fact that creditors won't receive a distribution, standing alone, does not constitute a bad faith filing. The Debtor further argues that it is a creditor's responsibility to determine the creditworthiness of a borrower before issuing credit. The Court agrees. However, as discussed above, the Court's finding of bad faith in this case does not rest on the fact that the Creditor may not receive a distribution in this case. Furthermore, the Creditor cannot be faulted for failing to evaluate the creditworthiness of the Debtor before extending credit. Best Roofing relied upon the Debtor's ability to levy a Special Assessment to pay for its services. Indeed, the Debtor levied and collected a Special Assessment for this purpose but later decided not to pay the proceeds to the Creditor.

At the Hearing, the Creditor also argued that there is no statutory or contractual authority that permits a condominium

association to liquidate through Chapter 7. In support of this argument, Creditor cited Fla. Stat. § 718.117 which provides for termination of the form of condominium ownership not the association, and the Debtor's Articles which state that the Debtor shall have perpetual existence. Motion Ex. "B": Articles § V. In response, the Debtor attacked the Creditor's standing to assert that the Debtor did not have authority to file for bankruptcy. The Court does not find it necessary to reach this issue, because the Court's determination does not rest on whether the Debtor had authority to file its petition.

## CONCLUSION

For the reasons stated above, the Court finds that the bad faith of a corporate Chapter 7 debtor can constitute cause for dismissal under § 707(a). In this case, the Debtor's officers and directors orchestrated a scheme in which the Debtor concealed assets, hid funds in an account under another name, spent Special Assessment funds that should have been disbursed to Best Roofing, and formed a new entity one day before the Petition Date for the purpose of collecting future assessments against the owners of the dwelling units for the future operations of the Condominium property. This scheme was carried out for the purpose of shielding the unit owners from an assessment, not to foster a fair and orderly liquidation of the

Debtor's assets. The Court's finds that these acts, which are evidence of the Debtor's bad faith, provide cause for dismissal of this case. The Court's ruling is limited to the particular facts and circumstances presented in this matter.

<u>**ORDER**</u>

The Court, having considered the Creditors' Motion, having heard the arguments and representation of counsel, and being otherwise fully advised in the premises, hereby:

**ORDERS AND ADJUDGES** that the Creditors' Motion is **GRANTED.** The above-referenced case is **DISMISSED** with prejudice for a period of one year.

# # #

Copies furnished to:

Bradley Shraiberg, Esq.
Paul Orshan, Esq.
Carla Barrow, Esq.
Les Osborne, Esq.
Deborah Menotte, Trustee
AUST